

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. WR-63,926-03

### EX PARTE GILMAR ALEXANDER GUEVARA, Applicant

### ON APPLICATION FOR WRIT OF HABEAS CORPUS IN CAUSE NO. 847121-C IN THE 180TH JUDICIAL DISTRICT COURT HARRIS COUNTY

*Per curiam*.

### O P I N I O N

This is a subsequent application for a writ of habeas corpus filed pursuant to the provisions of Texas Code of Criminal Procedure Article 11.071.[1]  In May 2001, Applicant was convicted of capital murder and sentenced to death.  *See* TEX. PENAL CODE § 19.03(a); Art. 37.071 § 2.  We affirmed his conviction and sentence on direct appeal.  *Guevara v. State*, 97 S.W.3d 579, 580 (Tex. Crim. App. 2003).

In December 2002, Applicant filed his initial application for a writ of habeas corpus

---

[1]  All references to articles herein refer to the Texas Code of Criminal Procedure.

challenging the merits of his conviction and resulting sentence. The judge entered findings of fact and conclusions of law recommending that relief be denied. In January 2006, this Court received Applicant's first subsequent writ application. In this application, Applicant raised the claim that his execution would violate *Atkins v. Virginia*, 536 U.S. 304 (2002), because he "was and is a person with mental retardation, as this Court has now interpreted that status . . . by its opinion in *Ex parte Briseno*, 135 S.W.3d 1 (Tex. Crim. App. 2004)." Applicant supported his *Atkins* claim with the report of a clinical neuropsychologist, Dr. Antolin Llorente, who administered a full-scale, Spanish-language IQ test on which Applicant obtained a "Broad Cognitive Ability score of 60+/-5 (.4%ile)." Llorente concluded in his evaluation that Applicant met the criteria for intellectual disability.

In 2007, this Court issued an order denying relief on Applicant's initial writ application and dismissing Applicant's first subsequent application as an abuse of the writ. *Ex parte Guevara*, Nos. WR-63,926-01 & WR-63,926-02 (Tex. Crim. App. 2007) (not designated for publication). At the time of our order, *Briseno* provided the framework for evaluating an intellectual disability claim. *See, e.g., Ex parte Sosa*, 364 S.W.3d 889, 890 (Tex. Crim. App. 2012) (remanding to the convicting court a 2006 writ raising an intellectual disability claim for the judge to consider the factors established in *Ex parte Briseno*).

In *Moore v. Texas*, 137 S. Ct. 1039 (2017) (*Moore I*), the United States Supreme Court rejected the use of the factors this Court set out in *Briseno* to analyze adaptive deficits because they "creat[e] an unacceptable risk that persons with intellectual disability will be executed." *Id.* at 1051. The Supreme Court held that this Court improperly "fastened its

intellectual-disability determination" to the definition of intellectual disability we adopted in *Briseno* for *Atkins* claims in death-penalty cases. *Id*. at 1053. Accordingly, this Court issued a new *Moore* decision on June 6, 2018, jettisoning the *Briseno* framework and "conclud[ing] that the DSM-5 should control our approach to resolving the issue of intellectual disability." *Ex parte Moore*, 548 S.W.3d 552, 559-60 (Tex. Crim. App. 2018). We held that, under the DSM-5 framework, Moore still "failed to show adaptive deficits sufficient to support a diagnosis of intellectual disability." *Id*. at 573.

Applicant filed the instant subsequent (-03) writ application with the district clerk in 2018. He alleged in this subsequent application that the Supreme Court's *Moore I* decision constituted a new legal basis for relief that was not available when he originally raised his intellectual disability claim. *See* Art. 11.071 §5(a)(1). He contended that he was entitled to a review of his intellectual disability claim on the merits and a grant of relief.

On June 6, 2018, in light of *Moore I*, we found that Applicant had satisfied the requirements of Article 11.071 § 5(a) with regard to his intellectual disability allegation in his -03 writ application. We remanded the application to the habeas court for a hearing to develop evidence, enter findings of fact and conclusions of law, and make a new recommendation to this Court on the issue. We allowed that the habeas court could receive new evidence germane to the question of intellectual disability from mental health experts and others. We directed that the court should consider all of the evidence in light of *Moore I*, 137 S. Ct. 1039, and should not consider the *Briseno* factors.

In 2019, the Supreme Court held that our 2018 *Ex parte Moore* decision was

inconsistent with *Moore I. Moore v. Texas*, 139 S. Ct. 666, 670 (2019) (*Moore II*). The Supreme Court faulted this Court for relying less on Moore's adaptive deficits than on his adaptive strengths, especially "adaptive improvements made in prison." *Id.* at 670-71. The Court suggested that this Court had continued to rely on a *Briseno*-type analysis and "lay stereotypes of the intellectually disabled" in reaching its conclusion. *Id.* at 671-72.

Meanwhile, Applicant received additional neuropsychological assessments. Applicant's new expert, Dr. Leo Shea, a clinical psychologist and neuropsychologist, interviewed Applicant, conducted several standardized tests, and reviewed the sworn statements of Applicant's family members. Shea reported that Applicant obtained a full scale IQ score on the Wechsler Adult Intelligence Scale Fourth Edition Spanish (WAIS-IV) in the borderline range (72). Shea further reported that "[v]irtually all indexes and Full-Scale scores," with the exception of one index, fell "within the range for Intellectual Disability." Shea concluded, "After conducting extensive neuropsychological testing and clinical interviews in Spanish and reviewing reports of his functioning during the development period, in my clinical judgment, [Applicant] is a person with Intellectual Disability."

The State's expert, Dr. Gilbert Martinez, completed an independent review of Applicant's psychological assessment records, including Shea's and Llorente's work, and concluded that,

> In the context of the documented presence of multiple adaptive functioning deficits throughout the formative period into adulthood and no other contributory medical history (such as a recently acquired traumatic brain injury), [Applicant's] test scores and functional history will likely meet DSM-5 and AAIDD criteria for Mild Intellectual Disability.

On April 13, 2020, the trial court held an evidentiary hearing. The parties offered several exhibits including the above experts' reports. The State did not contest the diagnoses of intellectual disability or "the legal consequence of that diagnosis." Both parties filed proposed findings of fact and conclusions of law stating that Applicant had met his burden to show that he satisfied the legal and clinical criteria for an intellectual disability diagnosis.

The habeas judge signed findings of fact and conclusions of law on April 16, 2020, recommending that this Court grant relief on Applicant's intellectual disability claim. The court found, "No expert has opined that Mr. Guevara does not have intellectual disability." Regarding the DSM-5's criteria for intellectual disability, the court found and concluded that "more than a preponderance of evidence demonstrates" that Applicant:

(A) "has significant deficits in intellectual functioning";

(B) "has significant adaptive deficits in the conceptual, social, and practical domains" and he "has adaptive deficits that have limited his functioning in one or more activities of daily life, such as communication, social participation and independent living across multiple environments, such as home, school, work, and community"; and

(C) has "significant adaptive deficits [that] were evident from early childhood and throughout the developmental period."

The habeas court further found that Applicant's "significant adaptive deficits are related to his intellectual disability and not attributable to a non-neurological disability or some intervening event like a traumatic brain injury in adulthood." The court found and concluded that Applicant has "met his burden to prove by a preponderance of the evidence that he satisfies the legal and clinical criteria for a diagnosis of intellectual disability and is therefore

ineligible for the death penalty."

Having reviewed the record in this case, we determine that Applicant has met his burden to show that he satisfies the diagnostic criteria for intellectual disability. Relief is granted on Applicant's intellectual disability claim. However, we do not adopt the habeas court's findings of fact and conclusions of law. We reform Applicant's sentence of death to a sentence of life imprisonment.[2] To the extent that Applicant raised other allegations in this subsequent writ application, we previously determined that they did not satisfy the requirements of Article 11.071 § 5(a) and we now dismiss them as an abuse of the writ. *See* Art. 11.071 § 5(c).

Delivered: September 23, 2020
Do not publish

---

[2] At the time of Applicant's offense, the only available alternative punishment for capital murder was life in prison with the possibility of parole after the actual time served equals forty years. In 2005, the Legislature amended Article 37.071 to provide that a life-sentenced capital defendant would no longer be eligible for parole. *See Estrada v. State*, 313 S.W.3d 274, 281 n.3 (Tex. Crim. App. 2010) (citing Art. 37.071 § 2(g); Acts 2005, 79th Leg., R.S., ch. 787, §§ 7, 8, 9, page 2706 (SB 60), eff. September 1, 2005).